UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRATEGIC MARKETING AND
RESEARCH TEAM, INC.,

       Plaintiff/Counter-Defendant,

Case No. 2:15-cv-12695

HONORABLE STEPHEN J. MURPHY, III

v.

AUTO DATA SOLUTIONS, INC.,

       Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER GRANTING DEFENDANT/COUNTER-PLAINTIFF'S MOTIONS TO COMPEL [10], FOR LEAVE TO FILE SUR-REPLY [17], AND FOR LEAVE TO FILE AN AMENDED COUNTERCLAIM [21], AND DENYING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS AND REMAND [14]**

Plaintiff Strategic Marketing and Research Team, Inc. ("SMART") sued Defendant Auto Data Solutions, Inc. ("ADS") for alleged violations of Michigan law that arose from the parties' business relationship. Defendant filed a counterclaim and removed the action on July 31, 2015. Before the Court are Defendants' motions to compel, for leave to file a sur-reply, and for leave to file an amended counterclaim, and Plaintiff's motion to dismiss and remand the case for lack of subject matter jurisdiction. The Court has reviewed the briefs, and finds that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant ADS's motions and deny SMART's motion.

**BACKGROUND**

SMART is a Michigan-based company that uses consumer data to create marketing programs for automobile dealers. ECF 1, PgID 12, ¶ 6. ADS is a California-based company that sells that consumer data. *Id.* ¶ 7. In 2014, SMART purchased a large amount of data from ADS ("the Data"), along with "certain dispatch and reporting services in conjunction with the Data." *Id.* ¶ 9–11. According to SMART, the Data was significantly less accurate

than what ADS guaranteed, and even fell below industry standards. When ADS's allegedly evasive responses and inaccurate billing practices compounded the problems caused by the "junk" Data, SMART switched to another data provider. *Id.* at PgID 13, ¶¶ 14–16.

ADS tells a different story. Rather than compiling the data records itself, ADS claims it "purchases the records from third-party vendors" and sells them to its customers. ECF 1, PgID 33, ¶ 5. To protect its relationships with those vendors and "prevent its customers from undercutting it," ADS enters into a non-compete agreement with each customer, pursuant to which the customer agrees not to purchase the data records from the vendors directly. *Id.* ¶ 7.

ADS claims that it executed a non-compete agreement with SMART in 2011 (referred to by ADS in its briefing as a "Non-Disclosure and Non-Circumvention Agreement," or "NDA") and that SMART has a copy. *Id.* ¶ 8. The NDA provided that during the parties' business relationship and for five years after termination of the relationship, ADS would not market its records to SMART's clients and SMART would not purchase data from ADS's vendors. The parties' relationship carried on for the next three years as ADS sold mail, email, and telephone records to SMART.

ADS claims it first assisted SMART with using the records to "deploy" marketing emails in January 2014, "when SMART tapped ADS to locate a vendor that would be able to deploy conquest email addresses," and ADS engaged vendor Act-On Software to provide the services to SMART. ECF 1, PgID 34, ¶ 10. SMART stopped purchasing records from ADS in November 2014. According to ADS, SMART purchased records from three of ADS's vendors during the NDA's five-year post-relationship period: Act-On, Innodatave,

and DataShark (also known as Netunim LLP). *Id.* ¶¶ 11–13. ADS also claims SMART still owes payment for a "substantial amount of data" purchased in 2014. *Id.* ¶ 14.

SMART initiated the present litigation in Michigan's 52-4 District Court on June 26, 2015. ECF 1, PgID 11–18. In its complaint, SMART brought state law claims of breach of contract (Count I), breach of warranty (Count II), quasi-contract (Count III), and negligence (Count IV), and sought less than $25,000 as relief. On July 29, 2015, ADS filed an answer and a counterclaim for state law breach of contract—payment (Count I), implied-in-fact contract (Count II), unjust enrichment (Count III), breach of contract—non-compete agreement (Count IV), and tortious interference with a contract/business expectancy (Count V). ECF 1, PgID 32–39. As relief, ADS sought $20,364.00 in unpaid invoices, and "an amount in excess of $75,000" for the damages resulting from SMART's alleged breach of the NDA.  ADS removed the action to the Court two days later, and SMART answered ADS's counterclaim.

On September 23, 2015, the parties submitted a joint discovery plan, and the Court issued a scheduling order, setting as deadlines March 31, 2016 for discovery and April 29, 2016 for dispositive motions. After two stipulated extensions, the final scheduling order set as deadlines September 1, 2016 for discovery and October 3, 2016 for dispositive motions. Ten days before the discovery deadline, ADS filed a motion for the Court to compel the production of "documents responsive to [ADS's] Requests for Production Nos. 1–23 contained in [ADS's] First Set of Interrogatories and First Set of Requests for Production," and the depositions of SMART representatives Katina and Michael Uzelac. ECF 10, PgID 95–96. The Court subsequently adjourned the remaining dates in the scheduling order to allow for adequate time to address the motion. In its response brief, SMART argued that

ADS's motion to compel "brings into focus a subject matter jurisdiction defect which ADS has been trying to avoid." ECF 11, PgID 160.

On November 10, 2016, SMART raised the jurisdictional issue in a motion to dismiss and remand the case. ECF 14. After the parties fully briefed the motion, ADS sought leave to file a sur-reply to SMART's reply brief. The Court scheduled a hearing for ADS's motion to compel and SMART's motion to dismiss, and three days before the hearing, ADS filed the instant motion for leave to file an amended counterclaim. The Court cancelled the hearing; briefing for the motion for leave to amend recently concluded.

## DISCUSSION

The parties' filings began with a discovery dispute and snowballed into a challenge to the Court's jurisdiction to hear the case, and a request to amend the counterclaim that ADS relied on to remove the case. Specifically, the parties' dispute centers on the existence and force of the NDA, and the language of an unsigned version of the NDA provided by ADS ("Unsigned NDA").

I. <u>ADS's Motion to Compel [10]</u>

First, the Court will address ADS's motion for an order compelling SMART to produce "documents responsive to [ADS's] Requests for Production Nos. 1–23 contained in [ADS's] First Set of Interrogatories and First Set of Requests for Production," and requiring SMART representatives Katina and Michael Uzelac to sit for depositions. ECF 10, PgID 95–96.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If a party fails to respond to discovery, including if that party's discovery response is evasive or incomplete, the requesting party may move for an order compelling discovery.

Fed. R. Civ. P. 37(a)(1)–(4). "The burden . . . rests with the party objecting to the motion to compel to show in what respects the discovery requests are improper." *Polylok, Inc., et al. v. Bear Onsite, LLC, et al.*, No. 312CV00535DJHCHL, 2017 WL 1102698, at *3 (W.D. Ky. Mar. 23, 2017). If an objection is lodged, the objecting party must "state whether any responsive materials are being withheld on the basis of that objection," and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). "Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court." *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011). Nevertheless, "[o]nce a party raises an objection to discovery based on relevance, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." *GCA Servs. Grp., Inc. v. ParCou, LLC*, No. 216CV02251STACGC, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) (quotation marks omitted).

ADS served its First Set of Requests for Production to SMART on February 3, 2016 and SMART filed a set of Responses and Objections on March 28, 2016. ADS's counsel claims that from June 2016 onward, SMART's counsel repeatedly promised it would produce the requested documents, and in reliance on those promises, ADS agreed to postpone the Uzelacs' depositions until after production. ECF 10, PgID 103–05; E-mails, ECF 10-6, PgID 135–39; ECF 10-7, PgID 141–42. Additionally, ADS claims that SMART's responses and objections to ADS's requests were either improper or insufficient. As of the motion filing, ADS asserts that SMART had yet to produce a single document. ECF 10, PgID 105.

SMART submitted the following responses to ADS's Request for Production:

| # | ADS's Request for Production | Objection |
|---|---|---|
| 1 | Agreements between SMART and ADS | No objection |
| 2 | SMART's non-competes with suppliers, 2006–present | Relevance (boilerplate) |
| 3 | Template non-completes in SMART's possession | Relevance (boilerplate) |
| 4 | Insurance agreements that include indemnification | None known; no objection |
| 5 | Documents and communications regarding ADS | Broad, burdensome, vague, scope, relevance (boilerplate) |
| 6 | Documents and communications referencing ADS | Broad, burdensome, vague, scope, relevance (boilerplate) |
| 7 | Materials reflecting ADS's sale of data to SMART | Broad, burdensome, vague, scope, relevance (partial objection) |
| 8 | Documents by SMART relating to assessment of ADS | No objection |
| 9 | Documents by SMART relating to quality of ADS data | Broad, burdensome, vague, scope, relevance (partial objection) |
| 10 | Business documents between SMART and Act-On Software | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 11 | Business documents between SMART and Netunim LLP | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 12 | Business documents between SMART and Innodatave | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 13 | Business documents between SMART and DataShark | Broad, burdensome, vague, scope, relevance (NDA-based objection) |
| 14 | Communications between SMART and Act-On, 2010–present | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 15 | Communications between SMART and Netunim, 2010–present | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 16 | Communications between SMART and Innodatave, 2010–present | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |
| 17 | Communications between SMART and DataShark, 2010–present | Broad, burdensome, vague, scope, relevance (boilerplate NDA-based objection) |

| 18 | Billings from ADS to SMART | No objection |
|---|---|---|
| 19 | ADS marketing materials | No objection |
| 20 | Documents reflecting SMART's payments to ADS | No objection |
| 21 | Communications between SMART and ADS as described in Section II(D) of SMART's initial disclosures | No objection |
| 22 | Documents supporting allegations in Complaint ¶ 13 | No objection |
| 23 | Documents supporting allegations in Complaint ¶ 32 | No objection |

In its response brief, SMART "acknowledges that it is overdue in producing documents, and that depositions (of principals on both sides) can and should be taken in time to permit preparation for trial." ECF 11, PgID 160. Nevertheless, SMART requests that the Court sustain its objections to Requests 2, 3, 5, 6, and 10 through 17 . *Id.* at 166. ADS contends that SMART's objections should be overruled because many of them are boilerplate, and are improperly premised on SMART's dispute of the NDA's existence—which is essentially an argument over the merits of the case. If the Court were to allow a defendant to withhold discovery simply because it disagrees with the factual basis of a claim, ADS argues, "it is doubtful any defendant would ever make a production of documents." ECF 12, PgID 239.

The Court agrees with ADS. The factual basis of ADS's claims is properly addressed at summary judgment, and "has no bearing on whether the discovery Plaintiffs seek is relevant, particularly viewed in light of a party's broad rights to discovery under Rule 26." *Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-CV-18, 2011 WL 2160462, at *2 (S.D. Ohio June 1, 2011). Indeed, the requested information within the scope of discovery need not even "be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). ADS's

7

requests are relevant to ADS's claims or defenses, and may lead to relevant evidence. Requests 2 and 3 may reveal documents showing that a standard-form NDA is required as a matter of practice and as a precondition to doing business with SMART. Requests 5 and 6 may reveal relevant documents, and SMART's boilerplate objections to the requests as overly broad and vague are unsupported.[1] *See Nolan, L.L.C. v. TDC Int'l Corp.*, No. CIV.A. 06-CV-14907, 2007 WL 2983633, at *4 (E.D. Mich. Oct. 11, 2007) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Requests 10 through 17 appear, on their face, to request relevant evidence or evidence which may lead to relevant evidence.

SMART does not ask the Court to sustain its objections to Requests 7, 8, and 9, so the Court will also compel SMART to produce documents in response to Requests 1, 4, 7, 8, 9, and 18 through 23. SMART is warned that any further failure to cooperate with the progression of the case or to comply with the Court's order will result in sanctions under Rule 37, up to and including the issuance of a default judgment against SMART on ADS's Counterclaim.

Finally, the Court will compel SMART representatives Katina and Michael Uzelac to sit for depositions. Under Rule 30, a party can conduct a deposition of any person without leave of court, subject to certain exceptions. Fed. R. Civ. P. 30(a)(1). When, as here, the potential deponent does not comply, the party seeking to take the deposition can move to compel the deposition under Rule 37. Fed. R. Civ. P. 37(a)(3). SMART does not contest this request, but asks that the depositions, if ordered, be taken "in time to permit

---

[1] Nevertheless, the Court strongly encourages the parties to—as ADS stated in its reply brief—work together "to see if the scope and any burden could be narrowed" now that SMART is being compelled to participate in discovery. ECF 12, PgID 242.

8

preparation for trial." ECF 11, PgID 160. The Court will require them much earlier than that. It is clear that the Uzelacs' depositions would have been taken within the discovery period but for SMART's obstruction. *See* ECF 10-3, 10-4, 10-5, 10-6; ECF 10, PgID 105 ("Auto Data had duly noticed depositions of SMART's representatives and agreed, in the spirit of cooperation and avoiding motion practice and court involvement, not only to postpone the depositions pending SMART's production, but to extend the discovery period to accommodate SMART."). Accordingly, the Court will order that the Uzelacs each sit for a deposition within 14 days of SMART's production, or by an earlier date otherwise stipulated by the parties.[2]

II.  SMART's Motion to Dismiss [14]; ADS's Motion for Leave to File Sur-Reply [17]

SMART's motion to dismiss and remand takes aim at Counts IV and V in ADS's counterclaim, mainly because ADS relied on the damages claims for those counts when it removed the case. ECF 14, PgID 249; *see* Removal, ECF 1, ¶¶ 4–6.[3]

"Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014) (alteration and quotation marks omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall

---

[2] ADS also seeks fees and costs associated with SMART's discovery abuses and in accordance with Rule 37's mandatory fee shifting provision. But they have included no documentation detailing the fees, much less an argument regarding the reasonableness of the amount they seek. Thus, there is nothing on which the Court can rely in issuing an award. Unless and until ADS submits a notice of fees and costs associated with their request here, the Court will refrain from issuing an award.

[3] After the parties fully briefed the motion, ADS moved for permission to file a sur-reply. The sur-reply presented by ADS helps the Court resolve disputed matters, as does SMART's response to ADS's motion for leave. Accordingly, the Court will grant the motion.

be remanded." 28 U.S.C. § 1447(c); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). "Removing defendants bear the burden of establishing federal subject-matter jurisdiction." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir. 1996). Under 28 U.S.C. § 1446, a defendant seeking to remove an action from state court must file "a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."

SMART contends that its factual attack on ADS's claimed basis for jurisdiction strips the presumption of truth from ADS's allegations, and empowers to the Court to make factual findings and determine whether it has jurisdiction. ECF 14, PgID 250 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) and *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915–16 (6th Cir. 1986)). Specifically, SMART denies the existence of the NDA, and thus argues that there was an insufficient "factual basis for ADS's claim that the amount in controversy is more than $75,000." *Id.* at 250.

The Court is troubled by the impudence of SMART's motion: having made it through a twice-extended discovery period allegedly without producing a single document, SMART now moves to remand the case based on ADS's inability to produce a document that SMART may very well have discovered—and may yet discover—while responding to ADS's discovery requests.[4] Either way, it is clear that SMART's arguments implicate the merits of

---

[4] Even if the signed NDA is not discovered, ADS persuasively argues that SMART's motion is based on the legally erroneous premise that ADS's inability to produce the signed NDA is *ipso facto* fatal to the claims predicated on the NDA. *See* ECF 15, PgID 368–70. ADS surely can seek to show the existence and force of the NDA through other evidence, including sworn declarations, deposition testimony, and other materials obtained through

10

ADS's claims; in particular, the factual and legal merits of the claim that SMART breached the NDA—a claim that is neither wholly insubstantial nor frivolous. *See Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (holding that unless an alleged claim is wholly insubstantial and frivolous, "jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."). At this point, therefore, it would be improper for the Court to inquire as to those factual allegations. *See Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("[A] district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim."); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting *Gentek*) ("When an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should *find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim."); *see, e.g.*, *Welch Printing Co. v. Eli Research, Inc.*, No. 3:11CV-599-S, 2012 WL 3527064, at *3 (W.D. Ky. Aug. 14, 2012) (relying on *Gentek* to find that "the defendants' challenge to the amount in controversy constitutes a factual challenge [to the plaintiff's] contentions," and determine that the plaintiff's allegations "support a finding of diversity jurisdiction, at least at this juncture."). Accordingly, the Court will deny without prejudice SMART's motion to dismiss and remand.

III.    ADS's Motion for Leave to File Amended Counterclaim [21]

Finally, ADS requests leave to amend its counterclaim originally filed on July 29, 2015. ADS claims that despite losing relevant documents in a 2011 electrical fire, and despite SMART's noncompliance with discovery to date, its review of the Unsigned NDA,

---

the discovery SMART is now compelled to produce.

11

third-party discovery, and its own materials produced during discovery revealed the need to "correct certain dates" and "update certain information about the NDA and the nature of Act-On Software, Inc.'s business" in its counterclaim. ECF 21, PgID 473–74.

Federal Rule of Civil Procedure 15 provides that leave to amend shall be freely given when justice requires. Leave should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (citation omitted). "An amendment is futile if it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010). Accordingly, the proposed amended pleading must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

First, SMART argues that the motion should be denied because the Court lacks subject matter jurisdiction. As explained above, that argument is without merit. Second, SMART contends that the proposed amended counterclaim is futile. In addressing futility, the question is not whether there is a triable issue of fact, but whether the well-pled factual assertions in the counterclaim, taken as true, support a reasonable inference of causation sufficient to state a valid claim. The Court finds here that they do. And finally, SMART claims that ADS's undue delay prejudices SMART because the proposed amended counterclaim is of a different nature than the original counterclaims, and "in the meantime, discovery in this action closed in September, 2016." ECF 24, PgID 527. The changes—and the accompanying delay—may have affected a party that meaningfully participated in

12

discovery. SMART is no such party; any prejudice it may face is not enough to prevent amendment under the liberal standard of Rule 15.

Accordingly, the Court will grant ADS's motion, and allow the amendment. Once the Amended Counterclaim is filed on the docket, the Court presumes that the parties will want to briefly reopen and expand the scope of discovery commensurate with the expanded scope of the Amended Counterclaim. Accordingly, the Court will require the parties to confer and submit stipulated limitations to the time, scope, and content of the additional discovery triggered by the Amended Counterclaim, and jointly propose a brief schedule for the remainder of the case.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that ADS' Motion to Compel [10] is **GRANTED**. SMART shall have **14 days** from the date of this order to provide the compelled discovery. Katina and Michael Uzelac shall each sit for a deposition within **14 days** of SMART's production, or by a date otherwise stipulated to by the parties.

**IT IS FURTHER ORDERED** that ADS's Motion for Leave to File Sur-Reply [17] is **GRANTED** and SMART's Motion to Dismiss and Remand [14] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that ADS's Motion for Leave to File an Amended Counterclaim [21] are **GRANTED**. ADS shall **FILE** on the docket the Proposed Amended Counterclaim, ECF 21-2, in its exact form as "Amended Counterclaim" within **21 days** of this Order, and SMART shall have **21 days** from the date of that filing to answer or otherwise respond.

**IT IS FURTHER ORDERED** that within **21 days** after SMART's filing of an answer, the parties shall **CONFER** and **SUBMIT** a Joint Proposed Scheduling Order containing proposed dates for the remainder of the case and any stipulated parameters that will move the case forward swiftly.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager